Ruben Dario Garcia Jr. # J-73373
Name and Prisoner/Booking Number

Mule Creek State Prison
Place of Confinement

Fac. A-Unit 4/PoBox 409020
Mailing Address

Ione, CA. 96540
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

FILED
Jul 11, 2022
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

Ruben Dario Garcia Jr.,
(Full Name of Plaintiff)
            Plaintiff,

v.

(1) A. Chandra - Correctional Officer,
(Full Name of Defendant)

(2) K. Mohr - Correctional Sergeant

(3) J. Charon - Correctional Lieutenant

(4) J. Quiring - Correctional Lieutenant
            Defendant(s).
☒ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. 2:22-cv-1221-KJN (PC)
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
   ☐ Other: _____

2. Institution/city where violation occurred: Mule Creek State Prison, Ione, California.

Revised 3/15/2016                               1

## B. DEFENDANTS

1. Name of first Defendant: A. Chandra. The first Defendant is employed as: Correctional Officer at Mule Creek State Prison.
   (Position and Title) (Institution)

2. Name of second Defendant: K. Mohr. The second Defendant is employed as: Correctional Sergeant Supervisor at Mule Creek State Prison.
   (Position and Title) (Institution)

3. Name of third Defendant: J. Charon. The third Defendant is employed as: Correctional Lieutenant Supervisor at Mule Creek State Prison.
   (Position and Title) (Institution)

4. Name of fourth Defendant: J. Quiring. The fourth Defendant is employed as: Correctional Lieutenant at Mule Creek State Prison.
   (Position and Title) (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?   ☒ Yes   ☐ No

2. If yes, how many lawsuits have you filed? 6. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: R. Garcia v. D. Smith, et al.;
      2. Court and case number: 10cv01187-AJB(RBB)
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) SETTLED

   b. Second prior lawsuit:
      1. Parties: R. Garcia v. J. Cluck, et al.;
      2. Court and case number: 12cv00523-BAS(PCL)
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) SETTLED

   c. Third prior lawsuit:
      1. Parties: R. Garcia v. D. Strayhorn, et al.;
      2. Court and case number: 13cv0807-BEN(KSC)
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) SETTLED

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

2

## D. DEFENDANTS

### [Continuation...]

5. Name of fifth Defendant: J. Weiss. The fifth defendant is employed as a Correctional Officer while acting as the Chief Disciplinary Officer at Mule Creek State Prison

6. Name of sixth defendant: Osaghae. The sixth defendant is employed as a licensed Mental Health Clinician and Doctor at Mule Creek State Prison with the California Prison Health Services.

7. Name of seventh Defendant: L. Sullivan. The seventh defendant is employed as a licensed Mental Health Clinician PhD. at Mule Creek State Prison with the prison California Prison Health Services.

8. Name of eighth defendant: P. Covello. The eighth defendant is employed as warden at Mule Creek State Prison.

## C. PREVIOUS LAWSUITS

### [Continuation...]

d. Fourth prior lawsuit:

1. Parties: R. Garcia v. B. Blahnik, et al.;
2. Court and case number: 14cv00875-LAB(BGS)
3. Result: SETTLED

e. Fifth prior lawsuit:

1. Parties: R. Garcia v. K. Seeley, et al.;
2. Court and case number: 19-56128
3. Results: Appeal Deny

f. Six prior lawsuit:

1. Parties: R. Garcia v. K. Wallace, et al.;
2. Court and case number: 20cv01453-JAM(DMC)
3. Results: Pending adjudication by the court

## D. CAUSE OF ACTION

### CLAIM I

1. State the constitutional or other federal civil right that was violated: First Amendment right "to file grievance(s)/seek redress without being subjected to adverse acts for doing so"

2. **Claim I.** Identify the issue involved. Check only one. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: Verbal Threats

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   1. Plaintiff, Ruben Dario Garcia Jr. ("Garcia"), is a California state prisoner in the direct custody of the California Department of Corrections and Rehabilitation (CDCR) and a mental health patient, medically diagnosed as suffering from chronic depressive disorder receiving prescribed necessary mental health treatment, at all times relevant to this civil complaint, while he was and continues to be incarcerated at Mule Creek State Prison located in Ione, California.

   2. Defendants is California state employees with the CDCR acting under color of law as correctional officers or licensed Mental Health Clinicians at MCSP. All is is responsible for the plaintiff's safe custody, treatment, care, or discipline in thier individual capacity under color of law.

   3. Plaintiff during his incarceration and while in the direct custody of the CDCR has a long history of constitutionally protected conduct activities, such as filing grievances and seeking redress of his grievance issues from the CDCR and/or local courts.

   [Continue at Attach Page 1-10...]

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   (1) Defendant A. Chandra verbally threatened "to have h. ; Sergeant move Garcia and his cellmate out of Unit # 1 Housing assignation (2) because (3) Garcia filed grievance against him (4) these threats "would chill or silence a person of ordinary firmness from future protected conduct activities (5) and failed to advance a legitimate correctional goal.

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim I?   ☒ Yes ☐ No
   c. Did you appeal your request for relief on Claim I to the highest level?   ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

3

## CLAIM II

1. State the constitutional or other federal civil right that was violated: <u>First Amendment right to file grievance(s)/seek redress without being subjected to adverse acts for doing so</u>.

2. **Claim II.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☒ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what each **Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.
   <u>See/Refer to Claim I statement of supporting facts incorporated hereto by reference</u>

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   <u>Retaliatory (1) verbal threats (2) false disciplinary charges and allegations (3) disciplinary action (4) cellmove (5) deny or intentional interference with medically prescribed daily necessary treatment/care (6) aggravation of serious medical condition (7) loss of disciplinary free period and related benefits (8) credit loss (9) deny all access to outdoor exercise for 90 days.</u>

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim II?  ☒ Yes ☐ No
   c. Did you appeal your request for relief on Claim II to the highest level?  ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

## CLAIM III

1. State the constitutional or other federal civil right that was violated: <u>Defendants intentional acts or omissions violated Garcia Eighth Amendment right</u>

2. **Claim III.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☒ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim III. Describe exactly what each **Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   <u>See Claim I statement of supporting facts incorporated hereto by reference</u>

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   <u>(1) Denial or intentional interference with Garcia prescribed daily medically necessary treatment and care (2) denial of all access to outdoor exercise for 90 days (3) the aggravation of Garcia medically diagnosed serious medical condition</u>

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☒ Yes   ☐ No
   b. Did you submit a request for administrative relief on Claim III?   ☒ Yes   ☐ No
   c. Did you appeal your request for relief on Claim III to the highest level?   ☒ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.

## CLAIM IV

1. State the constitutional or other federal civil right that was violated: Conspiracy to violate Garcia's civil rights pursuant to 28 U.S.C. 1983.

2. Identify the issue involved: [x] Retaliation

3. Supporting Facts:

    See Claim I statement of supporting facts incorporated hereto by reference.

4. Injury:

    Retaliatory (1) verbal threats (2) false disciplinary charges and allegations (3) disciplinary action (4) cellmove (5) deny or intentional interference with medically prescribed daily necessary treatment and care (6) aggravation of serious medical condition (7) loss of disciplinary free period and related benefits (8) credit loss (9) deny all access to outdoor exercise for 90 days

5. Administrative Remedies:

    a. Are there any administrative remedies available at you institution  Yes
    b. Did you submit a request for administrative relief on Claim IV   Yes
    c. Did you appeal your request for relief on Claim IV to highest level  Yes

## E. REQUEST FOR RELIEF

State the relief you are seeking:

1. $ 100,000.00 in punitive damages
2. Injuctive relief: the Court to Issue Order for CDCR "void" and "null" the RVR-115 Disciplinary Charges against Garcia in the interest of justice and grant him any order related benefit loss by Garcia based upon said disciplinary action
3. that no filing fees be required to be payed by Garcia or that he be compensated for any such fees
4. defendants to be required to pay for their own expenses

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __7/  /22__
DATE

SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

Case 2:22-cv-01221-TLN-CSK Document 1 Filed 07/11/22 Page 9 of 18

CLAIM I CAUSE OF ACTION Attach Page 1 of 10
Supporting Facts: (Continuation: ...)

4. The Secretary of the CDCR has setforth rules, regulations, policies, operational plans and procedures, including those setforth by the California Code of Regulations ("CCR") Title 15 and the Departmental Operational Manuel ("DOM") that inmates, such as Garcia, must follow and defendants as state employees with the CDCR must be familiar with and adhere to under color of law

5. FACTS:

On January 2, 2020, Garcia verbally complained to Mule Creek State Prison ("MCSP") Facility A Unit 1 control booth operator defendant A. Chandra that he and other top-tier inmates were being deny opportunity to shower[as required during their regularly scheduled Dayroom Program actibities] because CHANDRA was using the Unit's shower facilities for Prison Industry Authority ("PIA") inmate worker showers

6. Defendant A. Chandra responded the plaintiff verbal complaint by verbally stating "why don't you throw those inmates out of the showers!...".

7. Garcia for these reasons, pursuant to prison rules, then proceeded to write a formal inmate grievance embody in a CDCR Form 22 complaining that CHANDRA had violated the CCR by inciting acts of violence against inmates when he instructed for Garcia to physically throw inmates out of the showers.

8. Having done so, Garcia presented for process his writen grievance Form 22 to correctional officer ("c/o") Hurd and he pursuant to prison procedure then processed it. Specifically, c/o Hurd dated the Form 22 1/2/20 and signed it certifying that he had provided the plaintiff the required receipt Goldenrod Corbon Copy and had presented the original to defendant A. Chandra for an official writen response to Garcia's grievance.

9. Defendant A. Chandra then completed the required Form 22 Section B reserved for a staff response which he dated 1/2/20 and signed verifying his writen response thereto which read as follows:

Supporting Facts:

"...Inmate is advised that he needs to ask a Question or for an Item or Service...". His response [didnot] dispute the validity of Garcia's grievance accussations against him.

10. The plaintiff then completed the grievance Form 22 Section C Requesting for a Supervisor's review which he dated (1/2/20) and signed certifying his writen complaint and reasons for requesting for a supervisor's review which read as follows: "Program's Sgt. I have try to have c/o CHANDRA stop inciting acts of violence against other inmates by instructing that 'I physically throw inmates out of the showers'. Nevertheless, he was not receptive and I would like for you to do so". Once completed plaintiff deposited his Form 22 grievance in the Unit's Inmate Institutional Mail Delivery Box to be forwarded to the Facility A Programs Sgt. for a writen response. At the time, defendant A. CHANDRA used the Unit's loud speaker and verbally threatened the plaintiff. Specifically, stating: "...Oh, so you are sending it to my Sgt....O.k. listen up!...because Garcia Cell 217 is complaining about the showers and late program, I want all inmates in the showers to get out and lock-up!...if he keeps complaining, I will get my Seargent to move both of them out my building!...".

11. On January 9, 2020, inmate Lenin Garcia CDCR I.D. # J-12590 [plaintiff's assigned cellmate] formally filed with the CDCR a Form 602 Inmate Appeal/Grievance complaining that on 1/2/20 he had witnessed defendant A. Chandra using the Housing Unit 1 loud speaker and making the above verbal threats against plaintiff Garcia in retaliation because he had filed writen complaint against him.

12. On January 14, 2020, the plaintiff was served with disciplinary charges embody in a CDCR Rules Violation Report (RVR) Form 115 for the alleged offense of "Delaying a Peace Officer's Duties".—The RVR-115 Form is a computer generated standard form with information imputed by staff and shall be digitally signed by the reporting employee as "Certification" on the day it

Supporting Facts:

is completed by the reporting employee. (CCR § 3312.(a)(3))- Upon review the Form RVR-115 served to plaintiff Garcia reflects that it was digitally signed on 1/12/20 by defendant A. Chandra as the reporting employee and charged the plaintiff as follows: "On January 2, 2020, at approximally 1450 hours while performing my duties as Building 1 Control Booth Officer, while I was releasing Second Tier Dayroom Inmate Garcia CDCR I.D. # J-73373 (A1-217) insisted on speaking to me. Inmate Garcia stated 'Im a MAC REP [Mens Advisory Counsel], you need to talk to me right now' directing my attention away from providing security for my floor officers. I gave inmate Garcia a direct order to wait. Inmate Garcia failed to comply and continued to distract me. Inmate Garcia stated 'How will upper tier shower when PIA inmates are showering at the time, I'm just going to pull them out my self and throw them out!...'»Due to inmate Garcia escalating behavior and attempts to incite other inmates, I felt it necessary to put the Dayroom down so I can safely counsel him. I advised inmate Garcia that the PIA workers were already in the showers prior to Dayroom being open, once they are done you can continue with your showers. It took about 10 minutes until Garcia complied and were finally able to resume releasing inmates for Dayroom activities. This delayed the floor officers performing their duties as well as delayed Dayroom for Building 1. ".

13.    The plaintiff requested that the designated Senior Hearing Officer ("SHO") call as witnesses officers Hurd and Warren, whom on 1/2/20 were the CDCR designated floor officers for Unit 1 during Second Tier after-noon Dayroom program activities. The plaintiff also requested for the SHO to call as a witness inmate Lenin Garcia CDCR I.D. # J-12590 who on 1/2/20 personally witnes defendant A. Chandra verbally threatten the plaintiff after he complained that CHANDRA was inciting acts of violence against inmates.

14.    The RVR upon review reflects that on 1/12/20 defendanmt K. Mohr, a correctional staff Sgt., personally signed the Form RVR-115 [APPROVING] as

Supporting Facts:

the designated "Reviewing Supervisor" for the CDCR to initiate formal disciplinary action against Garcia based upon defendants RVR-115 disciplinary charges against him. The RVR-115 also reflects that on 1/13/20 defendant J. Charon a correctional Lieutenant ("Lt.") acting as the designated supervisory classification official personally classify as serious the disciplinary charges against Garcia as filed on 1/12/20 by defendants with the CDCR.

15. On January 19, 2020, defendant J. Quiring, a correctional Lt. while acting as the CDCR designated RVR-115 Disciplinary Hearing SHO, held a formal hearing to adjudicate the merits of the disciplinary charges against Garcia pursuant to applicable CCR.

16. At the hearing, Garcia plead "not guilty" and in support stated "I will be filing a grievance against c/o A. Chandra, Sgt. K. Mohr, and Lt. J. Charon for joining and together filing false RVR-115 disciplinary charges against me, alleging that I had threatened to use violence against inmates, in retaliation because I filed grievance against CHANDRA via Form 22".

17. The plaintiff then presented to SHO defendant J. Quiring a copy of the Form 22 grievance filed by him against CHANDRA to establish: that on 1/2/20 Garcia filed said grievance accusing CHANDRA of violating the CCR by inciting acts of violence against inmates. Having done so, Garcia pointed to the RVR-115 filed by defendants with the CDCR to establish that ten days [AFTER] Garcia filed his grievance CHANDRA join his supervisor Sgt.    defendants K. Mohr and J. Charon and as one they acted to filed the RVR-115 disciplinary charges against Garcia alleging "that it was 'Garcia' whom had verbally threatened to use acts of violence against inmates". Therefore, supporting Garcia's claim at the hearing that "defendants disciplinary charges against Garcia were false and filed in retaliation because he filed grievances against CHANDRA". Garcia also pointed to the Form 22 grievance to establish that said grievance shows at Section A Garcia dated it 1/2/20 and signed it formally accussing CHANDRA of

Supporting Facts:

inciting acts of violence against inmates that the Form 22 also reflects c/o Hurd dated it 1/2/20 and signed it certifying he had been presented the grievance for process and he did so by providing Garcia the required Goldenrod Copy(as a receipt)and     . then presented the original Form 22 to CHANDRA for the required writen response that defendant A. Chandra dated the Form 1/2/20 and signed it certifying he had been served the grievance and had responded in writing stating "Inmate is advised that he needs to ask for a question or for an item or service". The writen response by CHANDRA [didnot] dispute Garcia's accussation against him and Garcia pointed out at the hearing that prison records show "CHANDRA had not at any time filed RVR-115 disciplinary charges against Garcia alleging,that he had used a Form 22 to       · falsely accusse CHANDRA of violating prison rules by inciting acts of violence against inmates" (CCR § 3021.)

18.    At the hearing, Garcia pointed out to defendant J. Quiring that the RVR-115 filed by defendants with the CDCR upon review clearly establish:that RVR-115    was computer generated on 1/12/20 and signed by defendant A. Chandra as the "Reporting Employee" and signed the same day by defendant K. Mohr as the "Reviewing Supervisor Sgt" and      . on 1/13/20 the RVR-115 was signed by defendant J. Charon as the "Classification Official" .Therefore, charging Garcia with violating prison rules ten days [after] the alleged offense occured.

19.    Garcia also requested SHO take notice of Grievance Case # MCSP-A-20-00140 complaint by inmate L. Garcia # J12590 reporting CHANDRA had threatened Garcia with retaliatory cellmove for filing grievances against CHANDRA.

20.    At the hearing, Garcia complained that he had not been found guilty of any disciplinary offense in 13 months. Therefore,   QUIRING would be in violation of the CCR [if] he carryout verbal threat " that he will order staff to place Garcia on C-Status Inmate Segregated Housing and program/property restriction for 90 days" based on the RVR-115 disciplinary charges filed against him by

Supporting Facts:

defendants. Specifically, because per the CCR a inmate shall be placed on C-Status Inmate Segregated housing and property/program restriction only [i]f they have developed a significant disciplinary history within the last 180 days, such as two serious RVR-115 disciplinary offenses adjudicated against him or one serious and two administrative offenses found true against him. In addition, "Each determination affecting an inmate's placement within an institution or facility, transfer between facilities, program participation, priviledge group, or custody designation [shall] be made by Classification Committee composed of staff knowledgeble in the classification process..." (CCR §§ 3375., and pertinent sections 3044.; 3315.; and 3000.)

21. Defendant J. Quiring failed to call those witnesses requested by Garcia

22. After the hearing, Garcia received a formal writen "Disciplinary Hearing Results" signed by defendant J. Quiring as SHO finding him "GUILTY AS CHARGED". Specifically, alleging the charges were Garcia third offense and the following evidence supported his findings:

> 1. RVR-115 authored by c/o CHANDRA which stated in part: "... Inmate Garcia stated '...I am a MAC REP, you need to talk to me right now' [Men's Advisory Counsel] directing my attention away from providing security for my floor officers. I gave inmate Garcia a direct order to wait. Inmate Garcia failed to comply and continued to distract me. Inmate Garcia stated '...How will Uppper Tier shower when PIA inmates are showering at the time, I'm just going to pull them out myself and throw then out...', I felt it necessary to put the Dayroom down so I can counsel him ...'. It took about 10 minutes untill inmate Garcia complied and we were finally able to resume releasing inmates for Dayroom activities...'".
>
> 2. Defendant J. Quiring alleged within his writen results that during the hearing inmate Garcia stated, "he agrred that Officer CHANDRA put the Dayroom down to talk to him."

23. The writen Hearing Results upon review also reflects, that the supporting documentation presented by Garcia as evidence, Form 22 dated 1/2/20 and inmate L. Garcia grievance, were not consider by QUIRNG in making his findings Notwithstanding Garcia' claim disciplinary charges against him were retaliatory

Claim I                                                              Attach Page 7 of 10
Supporting Facts:

and that records showed CHANDRA, MOHR, and CHARON had filed RVR-115 disciplinary charges against Garcia, classified such as serious and approved for the CDCR to take disciplinary action against him only [AFTER] Garcia filed grievance against CHANDRA and they did so ten days [after] the alleged offense occurred, in violation of prison disciplinary procedures.

24.   The Hearing Results also stated, that defendant J. Quiring was sanctioning Garcia by Ordering staff to place him on C-Status Inmate Segregated Housing and program/property restriction for 90 days- beginning on 1/19/20 and ending by 4/18/20- as punitive disciplinary action and finding that Garcia was guilty as charged of RVR-115 disciplinary charges against him as filed by defendants. The Hearing Results [didnot] identify any existing disciplinary history generated by Garcia within the last 180 days (other than the RVR-115 charges against him as filed by defendants) in support of his decision and and action taken against Garcia as required by prison disciplinary procedures a setforth by the CCR. (CCR § 3044.; 3375.; 3315.; and 3000.)(Emphasis Added)

25.   The Hearing Results is also signed by defendant J. Weiss, while acting as CDCR designated Chief Disciplinary Officer ("CDO"), and served as official certification and sanction of defendant J. Quiring disciplinary actions against Garcia, while failing to advance a legitimate correctional goal.

26.   The Hearing Results as filed with the CDCR by defendants J. Quiring and J. Weiss reflects that these defendants [didnot] refer for review to the prison Classification Committee their decision "to order A-Facility staff to remove Garcia from General Population Inmate Housing assignation and programs participation elegibility and to place him on C-Status Inmate Segregated housing and program/property

restriction for 90 days. But instead the writen Hearing Results alleged to the CDCR that such prison disciplinary procedures were "NOT APPLICABLE".(See § 3044.(b) and pertinent sections §§ 3375.; 3315.(f) & (g) establishing that these defendants claims were false and failed to advance clearly establish CDCR disciplinary procedures.)

27. Defendant Patrict Covello, as warden at MCSP, has been placed on notice of the abusive/improper conduct of defendants A. Chandra, K. Mohr, and J. Quiring, J. Charon, J. Weiss by a number of complaints and grievances filed by inmates, but has failed to properly train or discipline defendants for their acts of improper conduct to control their behavior.

28. On January 24, 2020, because of the above named defendants acts or omissions the plaintiff was physically removed from MCSP-A-Facility General Population inmate housing assignation and program participation and elegibility and physically placed on C-Status Inmate Segregated housing and program/property restriction for 90 days. As direct result, Garcia during this period of time (1) was confined to his assigned cell 24 hours a day (2) was not allowed to posses within his cell any form of entertainment appliances, such as a television, radio, or compact disc palyer. Nore was he allowed to posses books or recreational games or playing cards or any other form of art and craft material (3) was not allowed to participate in any out-of-cell Dayroom program or recreational actibities for Unit # 4 inmates. Nore, in any form of out-of-cell/Out-Door Yard exercise, programs, or recreational actibities for Unit # 4 inmates (4) and was not allowed to report to work. These housing conditions imposed against Garcia failed to advance a legitimate correctional goal and deny or interfered with his daily medically prescribed necessary mental health treatment and aggravated Garcia medically diagnosed chronic depressive disorder, a serious medical condition.

Claim I                                                               Attach Page 9 of 10
Supporting Facts:

29.   Garcia submitted formal CDCR 7362 Inmate Request for Medical Services and 602 Inmate Appeal/Grievance forms with the prison CPHCS. At the time, he complained: <u>that</u> he had began experiencing daily severe bouts of anxiety, an inability to sleep, racing thoughts, and feelings of being over-whelmed by incarceration, family struggles, court legal issues, lack of program participation elegibility and isolation [AFTER]   Facility-A staff (on 1/24/20) physically removed Garcia from assignment in the Inmate General Population housing and programs participation at Unit-1-Cell # 217 and   physically placed him on C-Status Segregated housing  and programs/property restriction for 90 days at Unit-4-Cell # 114, while he was in the direct supervision of defendants Osagha and L. Sullivan, state employees with the prison CPHCS as licensed Doctor Mental Health Clinicians acting   as Garcia pcp, and while Garcia was a mental health patient at the 3 XCMS level of care receiving daily prescribed necessary mental health treatment for medically diagnosed chronic depressvice disorder. These housing conditions Garcia complained [FAILED] to advance a legitimate correctional goal and interfered/ deny him access "to the recommended necessary mental health treatment" prescribed for Garcia by defendants while acting as his pcp. Specifically, Garcia was being confined to his assigned C-Status housing 24 hours a day and

not allowed to posses in his cell: a television, radio, CD-Player, games or playing cards, hobby craft materials. Additionally, Garcia was not being allowed participation in any form of out-of-cell/in door inmate Dayroom programs or recreational activities. Nor in any form of out-of-cell/out door exercise or recreational actibities. As a direct result, Garcia is not able to engage in    recommended mental health treatment therapy as prescribed by his pcp, such as: (1) listening to music or radio pragcams (2) watch movies or television shows and progcams (3) play  cards or other form of recreational games

(4) engage in hobby craft actibities (5) go outdoors for exercise, walks, fresh air and sunlight (6) socialize with other inmate friends (7) and engage in any other form of recreational actibities. For these reasons, Garcia requested for defendants Osaghae and L. Sullivan "to take any necessary steps" to ensure his housing conditions didnot interfere or deny Garcia access to his prescribed daily necessary mental health treatment and care, while in the direct care and treatment of his assigned pcp defendants Osaghae and L. Sullivan.

30. In response to Garcia formal complaint and request to be granted access to his prescribed medically necessary mental health treatment and care defendants Osaghae and L. Sullivan elected "not to intervene" while acting as Garcia mental health pcp to ensure Garcia received his prescribed daily necessary mental health treatment and care, notwithstanding Garcia's serious medical condition and needs as a mental health patient at the CCCMS Level of Care

31. During the period of time that Garcia was kept confined by defendants on C-Status Inmate Segregated Housing and Program/Property restriction [Between 1/24/20 and 4/19/20] licensed psychiatrist with the department CPHCS upon evaluating his medically diagnosed chronic depressive disorder found Garcia serious medical condition had been exacerbated and was suffering from severe bouts of anxiety, fatigue, lack of sleep, racing thoughts, and acute depression. For these reasons, she increased Garcia's medically prescribed necessary treatment to include daily doses of the medication known as Prozac a powerful anti-psychotic medication and increased Garcia prescribed daily doses for the medication Visteril also a powerful anti-psychotic medication