Ruben Dario Garcia Jr.
MCSP-FAC-A-4-243
P.O.Box 409020
Ione, CA. 96540
CDCR I.D. # J73373



**FILED**

MAY 0 4 2023

CLERK U.S DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

PLAINTIFF IN PRO PER/THROUGH JAILHOUSE LAWYER(S) ASSISTANCE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RUBEN DARIO GARCIA JR.

      Plaintiff,

v.

A. CHANDRA, et al.,

      Defendants.

CASE # 22-cv-1221 KJN P

PLAINTIFF'S FIRST AMENDED COMPLAINT

1. Violation of Civil rights
   42 U.S.C. § 1983-Retaliation

2. Violation of Civil Rights
   42 U.S.C. § 1983-14th Amendment
   Procedural Due Process rights

3. Violation of Civil rights
   42 U.S.C. § 1983-Eighth Amendment
   Deprivation of minimal civilized
   measures of life's necessities/
   Cruel and Unusual Punishment

4. Violation of Civil Rights
   42 U.S.C. § 1983-Civil Conspiracy

DEMAND FOR JURY TRIAL

## INTRODUCTION

1.    Plaintiff, Ruben Dario Garcia jr. ("Garcia"), brings this lawsuit

pursuant to 42 U.S.C. § 1983 and the First, Eighth, and Fourteenth Amendments

to the United States Constitution for subjecting him to violations of his right

to be free from retaliation,denial of due process, the deprivation

of the minimal civilized measures of life's necessities or be subjected to cruel and unusual punishment. Garcia seeks equitable relief and damages.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of law, of rights secured by the Constitution of the United States and Acts of Congress. This Court has jurisdiction to grant Garcia request for declaratory relief pursuant to the Declaratory Judgement Act, 28 U.S.C. §§ 2201 and 2202. Further, this Court has authority to grant the requested injuctive relief under 28 U.S.C. § 1343(3); the requested compensatory punitive, and nominal damages under 42 U.S.C. § 1983 and 28 U.S.C. § 1343; Garcia's prayer for costs, including reasonable attorney's fees, under 28 U.S.C. § 1920 and 42 U.S.C. § 1988.

3.      Venue lies in the Eastern District of California, the judicial district in which the claims arose, pursuant to 28 U.S.C. § 1391 (1)-(2). Garcia respectfully requests a jury trial on the allegations giving rise to this action.

## EXHAUSTION OF PRE-LAWSUIT PROCUDURES

4.      At Mule Creek State Prison there are administrative remedies available and Garcia submitted multiple requests for administrative relief on all claims being raised via instant First Amended Complaint. Additionally, Garcia appealed all his request for relief on all claims to the highest level.

## PARTIES

5.      Ruben Dario Garcia Jr. ("Garcia") is the named Plaintiff in these civil matters and he was, at all times, a prisoner of the State of California in the custody of the  California Department of Corrections and Rehabilitation ("CDCR") at Mule Creek State Prison ("MCSP"). During Garcia's incarceration at MCSP, he

filed civil suit regarding retaliatory cell searches. These acts did not endear Garcia to the correctional staff at the facility and they regularly label him a "whiner" or "complainer".

6.    On information and belief, defendant A. Chandra was, at all relevant times, employed by the CDCR as a Correctional Officer assigned to MCSP. At all times mentioned, Chandra was acting under color of State law and is sued in his individual capacity.

7.    On information and belief, defendant K. Mohr was, at all relevant times, employed by the CDCR as a supervisor Correctional Sgt. assigned to MCSP. At all times mentioned, Mohr was acting under color of State law and is sued in his individual capacity.

8.    On information and belief, defendant J. Quiring was, at all relevant times, employed by the CDCR as a supervisory Correctional Lieutenant ("Lt.") assigned to MCSP. Quiring has a significant history of misconduct towards the inmate population at MCSP of retaliatory conduct. Quiring is the subject of several internal appeals/complaints filed by the inmate population, including civil complaints filed with the federal court's. At all times mentioned, Quiring was acting under the color of State law and is sued in his individual capacity.

9.    On information and belief, defendant J. Charon was, at all relevant times, employed by the CDCR as a supervisory Correctional Lieutenant ("Lt.") assigned to MCSP. At all timed mentioned, Charon was acting under color of State law and is sued in his individual capacity.

10.    On information and belief, defendant J. Weiss was, at all relevant times, employed by the CDCR as a supervisory Correctional Chief Disciplinary Officer ("CDO") assigned to MCSP. As a CDO Weiss, per the California Code of Regulations ("CCR"), is required to review all disciplinary methods and actions taken against a inmate and shall affirm, reverse, or modify any disciplinary actions

taken against an inmate to ensure the advancement of legitimate correctional goals. At all times mentioned, WEISS was acting under the color of State law and is sued in his individual capacity.

11.    ...

12.    ...

13.    Defendants CHANDRA, MOHR, CHARON, QUIRING, and WEISS    were charged by law and were responsible with supervision, care, security, and safety of Garcia, and were responsible for ensuring that Garcia constitutional and statutory rights were not violated. It was the duty and responsibility of these defendants to supervise, monitor and protect inmates under their supervision and control; to maintain safety and security in the prison; to report wrongful conduct; to maintain inmate discipline only within the guidelines and disciplinary rules promulgated by the CCR/CDCR; to not falsify internal documents; to not bring forth false charges against inmates; and to not engage in retaliatory conduct.

## PRELIMINARY ALLEGATIONS

14.    At all times relevant to the facts alleged herein, defendants were duly appointed, qualified and acting officers, employees, and/or agents of CDCR, employed as such by CDCR, and acting within the course and scope of their employment and/or agency and under color of state law. Each of the defendants caused and is responsible for the wrongful conduct and resulting by, inter alia,

personally participating in the conduct, or acting jointly and in concert with others who did so by authorizing, acquiescing, condoning, acting, omitting or failing to take action to prevent the unlawful conduct by promulgating or failing to promulgate policies and procedures pursuant to which the unlawful conduct occurred; by failing and refusing, with deliberate indifference to Garcia's rights, to initiate and maintain adequate supervision, security, training, compliance with responsibilities and duties, and staffing; by failing to maintain proper adequate policies, procedures and protocols; and by ratifying and condoning the unlawful conduct performed by agents and correctional officers and employees under their direction and control.

15.    Whenever and wherever reference is made in this Complaint to any act by defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each defendant individually, jointly or severally.

## FACTUAL ALLEGATIONS

16.    The Secretary of the CDCR has setforth rules, regulations, policies, operational plans and procedures, including those setforth by the CCR Title 15 and the Departmental Operational Manuel ("DOM") that inmates, such as Garcia, must follow and defendants as state employees with the CDCR must be familiar with and shall adhere to under color of law.

17.    On January 2, 2020, at MCSP Facility A Housing Unit # 1 during regularly scheduled daily inmate out-of-cell "Dayroom" programs activities Garcia verbally complained to Unit # 1 Control Booth Operator defendant A. Chandra that he and other top-tier inmates were being deny an opportunity to shower [as required during their regularly scheduled Dayroom Programs actibities] because CHANDRA was using the Unit's shower facilities during Dayroom for Prison Industry Authority ("PIA") inmate worker's showers. In response, defendant A. Chandra stated to Garcia "why don't you throw those inmates out of the showers!...".

18.    Garcia,as allowed under prison rules, for these reasons proceeded to write a formal inmate grievance,embody in a CDCR Form 22,complaining:that CHANDRA had violated the CCR by inciting acts of violence against inmates when he instructed for Garcia to physically grab and throw inmates out the showers. Having done so, Garcia presented for process his written grievance Form 22 to correctional staff whom per the CCR dated and signed the Form 22 cerfifying that he had provided Garcia the required receipt Goldenred Carbon Copy and had presented the original to defendant A. Chandra for an official written response to Garcia's grieavance accusations against CHANDRA.

19.    Defendant A. Chandra the very same day then completed the required Form 22 Section B reserved for a staff writen response to Garcia grievance. Specifically, CHANDRA dated the Form 22 on 1/2/20 and signed certifying his writen response thereto which reads as follows: "Inmate is advised that he needs to ask a question,or for an item or service...". Defendant's A. Chandra response [did not] dispute the validity of Garcia's grievance accusations against him. Furthermore, prison records upon review show that at no time has CHANDRA ever file with the CDCR a Rules Violation Report ("RVR") Form 115 charging Garcia with making false allegations against him (a peace officer) which is a serious violation of prison rules by a inmate.

20.    Garcia,having had received defendant A. Chandra writen response to the Form 22 grievance, the very same day (1/2/20) then completed the grievance Form 22 section C requesting for a supervisor's review of his grievance issues which read as follows: "Programs Sgt. I have try to have CHANDRA stop inciting acts of violence against other inmates by instructing that 'I physically throw inmates out of the showers". Nevertheless, he was not receptive and I would like for you to do so"". Once completed Garcia walked over to the Unit's Inmate Institutional Maild Delivery Box and deposited his grievance Form 22 to be forwarded to the Facility A Programs Sgt. for a writen supervisory response. At the time,

defendant A. Chandra witnessed Garcia depositing his writen grievance against CHADRA in the delivery box at which time CHANDRA proceeded to use the Unit's loud speaker to verbally threaten Garcia. Specifically, CHANDRA verbally threatened Garcia stating "...Oh, so you are sending it to my Sgt....Ok listen up!...because Garcia cell 217 is complaining about the showers and late program, I want all inmates in the showers to get out and lock-up...if he keeps complaining I will get my Sgt. to move both of them out my building!...".

21.    Defendant A. Chandra actions, in verbally threatening Garcia, was aimed at chilling his exercise of his First Amendment rights and is circumstantial evidence of his intention to join and come together with others to act in concert/chain conspiracy to subject Garcia to adverse action in retaliation because of his protected conduct actibities.

22.    On January 9, 2020, inmate Lenin Garcia CDCR I.D. # J-12590, Plaintiff's brother, formally filed with the CDCR a Form 602 Inmate Appeal/Grievance reporting CHANDRA's verbal threats against Garcia and him and requesting proper action to be taken in the matter.

23.    On January 12, 2020, prison records show: that defendant A. Chandra join and came together with defendant K. Mohn- a correctional Sgt. acting as CHANDRA immediate supervisor- at which time these defendants acted in concert and jointly   generated and filed with the Department a Rules Violation Report ("RVR") Form 115 charging Garcia with violating prison rules, ten (10) days [after] the alleged offense occurred and [only] [after] Garcia filed grievance reporting CHANDRA's acts of serious misconduct.The RVR-115 upon review also reflects that on 1/13/20 defendant J. Charon acting as supervisory Lieutenant "Classification Official" classify as serious RVR-115 charges against Garcia. Thus, [approving] for serious disciplinary action to be taken against Garcia, in violation of CCR requirement that charges be classify and filed with CDCR within 48 hours of day of offense.

24.    Defendants actions above was aimed at chilling Garcia exercise of his First Amendment rights and advanced CHANDRA's verbal threats made against Garcia.

25.    The RVR-115 charges against Garcia read as follows: "On January 2, 2020, at approximally 1450 hours while performing my duties as Building 1 Control Booth Officer, while I was releasing second tier Dayroom    inmate Garcia I.D. # J73373 (A1-217) insisted on speaking to me. Inmate Garcia stated "I'm a MAC REP [Mens Advisory Counsel], you need to talk to me right know" directing my attention away from providing security for my floor officers. I gave inmate Garcia    a direct order to wait. Inmate Garcia failed to comply and continued to distract me. Inmate Garcia stated "How will upper tier shower when PIA inmates are showering at the time, I'm just going to pull them out my-self and threw them out!...". Due to inmate Garcia escalating behavior and attempts to incite other inmates, I felt it necessary to put the Dayroom down so I can safely counsel him. I advised inmate Garcia that the PIA workers were already in the shower prior to Dayroom being open, once they are done you can continue with your showers. It took about 10 minutes untill Garcia complied and were finally able to resume releasing inmates for Dayroom actibities. This delayed the floor officers performing their duties as well as delayed Dayroom for Building # 1."

26.    On January 14, 2020, Garcia was served with the RVR-115 charges against him above compleated and filed with CDCR by above named defendants, at which time he requested for the designated Senier Hearing Officer ("SHO") to call as witnessess officers HURD and WARREN, who were on 1/2/20 the assigned floor officers. The plaintiff also requested for the SHO to call inmate L. Garcia I.D. # J12590 as a witness to defendant A. Chandra verbal threats "to having his Sgt. remove Garcia and L. Garcia from Unit 1 housing assignation [if] Garcia kept complaining about CHANDRA acts of improper conduct.

27.    On January 19, 2020, defendant J. Quiring- a correctional Lt. acting as the CDCR designated RVR-115 Disciplinary Hearing Officer- held a formal hearing to adjudicate per the CCR the merits of the disciplinary charges made against Garcia. At the hearing, Garcia plead "not guilty" and in support stated "I will be filing a grievance against c/o A. Chandra, Sgt. K. Mohr, and Lt. J. Charon for joining and together filing false RVR-115 disciplinary charges against me alleging that I had been inciting other inmates, in retaliation because I had filed grievances against CHANDRA".

28.    The plaintiff having had enter a plead of "not guilty" then presented to SHO Quiring a copy of the Form 22 grievance filed by him on 1/2/20 against CHANDRA to clearly establish: that on 1/2/20 Garcia filed said grievance accusing CHANDRA of violating the CCR by inciting acts of violence against inmates. Specifically, when he instructed for Garcia "to grab those inmates that were showering and threw them out the showers!...". Having done so, Garcia pointed to the Form 22 Grievance Section B where CHANDRA had dated and sign the Form 22 Grievance Certifying his writen response which read "Inmate is adviced that he needs to ask for a question or for an item or service...". The writen response by CHANDRA [didnot] dispute Garcia's accusation against him. Garcia then pointed to the RVR-115 filed by defendants with the CDCR to establish: that on 1/12/2020 ten days [after] Garcia filed Form 22 Grievance accusing CHANDRA of inciting acts of violence against inmates, CHANDRA join and came together with defendants MOHR and CHARON and as one they acted to file the RVR-115 disciplinary charges against Garcia, in clear violation of prison rules requirements that any violation of prison rules by an inmate be filed with the Department by end of work shift in accordance to CCR time constraints. Garcia pointed out to the hearing officer that prison records upon review will show ( I ). "Chandra had at no time acted to file with the Department RVR-115

disciplinary charges against Garcia alleging      he had used a Form 22
inmate grievance and falsely accused CHANDRA of violating prison rules by
inciting acts of violence against inmates", as required under CCR § 3021.;
(2) the RVR-115 compleated and filed with CDCR by defendants "was   computer
generated and signed by defendants on 1/12/20 on the day they compleated it".
Having done so, Garcia requested for the SHO to take official notice of
Grievance Case # MCSP-A-20-00140 filed with the CDCR by inmate L. Garcia I.D.
# J12590 and logged on 1/10/2020 reporting accusation against CHANDRA.
Specifically, that on 1/2/2020 CHANDRA had threattened Garcia with retaliatory
cellmove for filing grievance against him. Therefore, Garcia argued to the SHO
that this was supporting evidence establishing the disciplinary charges against
Garcia were retaliatory in nature.

29.     Prison Records show: that on 1/2/2020 at no time was an alarm activated
at Facility A Unit 1 by CHANDRA due to any alleged disturvance by Garcia.

30.     At the hearing, Garcia requested for his requested witnessess to be call
in support of his not guilty plead.

31.     At the hearing, Garcia pointed-out to defendant QUIRING "that he had not
been found guilty of any form of disciplinary offense(s) in the last 13 months".
Therefore, per the CCR Garcia [could not] be placed on C-Status Inmate
Segregated Housing/Detention and Property/Programs restrictions for any period
of time based upon the singular disciplinary charges filed against him by
defendants [if] found guilty. In response, defendant J. Quiring verbally
threattened (to subject Garcia to) adverse action stating that "he will order
Facility A staff to immediatelly remove Garcia from General Population housing
assignation at Unit 1 and to place him in C-Status Inmate Segregated Housing/
Detention and programs/property restriction"., notwithstanding clearly
established CCR prison disciplinary procedures [prohibiting] any such
sanctions against Garcia under the circumstances of his case. (See CCR §

3044.(b)(4) which states in relevant part: "Work Group C...(A) Any inmate...
who is deemed a program failure as defined in section 3000. by a classification
committee [shall] be assigned to Work Group C for a period not to exceed the
number of disciplinary credit forfeited due to the serious disciplinary
infraction(s)..."; see also CCR § 3000. which states: "Program failure means
any inmate who generates a significant disciplinary history within the last
180 days from the current date. A guilty finding for two serious Rules Violation
Reports or one serious and two administrative RVR's within the 180 days time
period is reasonable evidence of a significant disciplinary history and may
be considered a program failure."(Emphasis))

32.    Defendant QUIRING verbal threats was aimed at chilling Garcia exercise
of his First Amendment rights.

33.    Defendant J. Quiring failed to call those witnesses requested by Garcia •

34.    After the hearing, Garcia received formal writen Disciplinary Hearing
Results signed      by defendant J. Quiring as SHO stating "GUILTY AS CHARGED"
and identifying the evidence rely upon in support of said findings only as
follows:

> 1.  RVR-115 staff statements which read in part: "...I am a MAC REP,
> you need to talk to me right now [Men's Advisory Counsel] directing
> my attention away from providing security for my floor officers. I
> gave inmate Garcia a direct order to wait. Inmate Garcia failed to
> comply and continued to distract me. Inmate Garcia stated '...How
> will Upper Tier shower when PIA inmates are showering at the time,
> I'm just going to pull them out myself and throw them out...', I
> felt it necessary to put the Dayroom down so I can counsel him...'
> It took about 10 minutes untill inmate Garcia complied and we were
> finally able to resume releasing inmates for Dayroom activities'".

> 2.  Defendant J. Quiring alleged that during the disciplinary
> hearing Garcia stated "he agree that officer CHANDRA put the
> Dayroom down to talk to him."

35.    The Hearing results upon review show, that the supporting documents
Garcia presented- i.e. Form 22 Grievance dated 1/2/20 accusing CHANDRA of
inciting acts of violence against inmates or inmate L. Garcia # J12590
grievance (dated 1/10/20) clearly reporting the verbal threats

made by CHANDRA on 1/2/20- were not considered by QUIRING in making his findings.

36.    The Hearing Results also stated, that defendant J. Quiring was sanctioning Garcia with 90 days of C-Status Inmate Segregated Housing/Detention and Programs/Property restriction[beginning on 1/19/20 and ending on 4/18/20] as punitive disciplinary action against him because of the RVR-115 Disciplinary Charges filed against him by defendants. In support, the writen Hearing Results alleged to the CDCR [falsely] that "these charges were Garcia third offense" within the last 180 days. Note: Prison records will show that Garcia last disciplinary offense adjudicated against him occurred 13 months prior to defendants RVR-115 charges against him. Therefore, QUIRING decision to sanction Garcia with 90 days of C-Status Inmate Segregated Housing/Detention failed to advance any legitimate correctional goal under the circumstances.

37.    Defendant's actions was aimed at chilling Garcia exercise of his First Amendment rights.

38.    The Hearing Results is also signed by defendant J. Weiss, as acting CDCR designated Chief Disciplinary Officer, and served as official certification and sanction    defendant J. Quiring disciplinary action against Garcia. These individual action failed to reasonably advance legitimate correctional goal. Specifically, because defendant J. Quiring sanctions against Garcia consisting of 90 days of C-Status Inmate Segregated Housint/Detention and Programs/Property restrictions'was an illegal sentence"and under CCR § 3312.(b)(1) defendant J. Weiss as Chief Disciplinary Officer "shall affirm, reverse or modify the disciplinary action and/or credit forfeiture. The Chief Disciplinary Officer may order a different action, order a different method of discipline, dismiss a charge, order a rehearing of the charge, or combine any of these actions." in a good faith effort to advance legitimate correctional goals.

39.    Defendant J. Weiss actions above had a chilling effect upon Garcia's

exercise of his First Amendment rights.

40.    The writen Hearing Results compleated and filed with the CDCR by
defendants QUIRING and WEISS upon review establishes clear showing: (1) that
these defendants [didnot] refer for Institutional Classification Committee
review and approval their decision and orders instructing Facility A staff
"to immediately remove Garcia from General Population inmate housing
assignment and programs participation and eligibility status and to place him
within the facility C-Status Inmate Segregated Housing/Detention and programs
property restrictions for 90 days"; (2) and that these defendants instead
[falsely] alleged to the CDCR that per the CCR they were not required to do so.
These individual actions by defendants QUIRING and WEISS failed to reasonably
advance a legitimate correctional goal and stand in clear violation of CCR §
3375.(c) which states in relevant part: "Each determination affecting an inmates
placement within an institution/facility, transfer between facilities, program
participation,privilege groups, or custody designation [shall] be made by a
classification committee composed of staff knowledgeable in the classification
process."; see also CCR § 3315.(g) which states: "Classification Committee
Review. Any serious disciplinary action requiring reconsideration of an inmate's
program,work group, or housing assignation [shall] be referred to the next
reasonably scheduled classification committee for review. This review [shall]
not occur untill the chief disciplinary officer's audit of the RVR has been
concluded. The classification committee [shall] affirm or modify the inmate's
program,work group, or housing assignment"; see CCR § 3044.(b)(4) which states
in relevant part: "Work Group C...(A) Any inmate...who is deemed a program
failure as defined in section 3000. by a classification committee [shall] be
assigned to Work Group C for a period not to exceed the number of disciplinary
credit forfeited due to the serious disciplinary infraction(s)..."; see CCR §

3000. which states: "Program failure means any inmate who generates a significant
disciplinary history within the last 180 days from the current date. A guilty
finding for two serious Rules Violation Reports or one serious and two
administrative RVR's within the 180 days time period is reasonable evidence of
a significant disciplinary history and may be considered a program failure.")

41.    Defendants QUIRING and WEISS actions were aimed at chilling Garcia
exercise of his First Amendment rights.

42.    On January 24, 2020, as a direct result of defendants QUIRING and WEISS
individual actions, Garcia was physically removed from Facility A General
Population inmate housing assignation and programs participation and elegibility
status and was physically placed    in the facility C-Status Inmate Segregated
Housing/Detention and programs/property restrictions status for 90 days. As a
direct result, during this period of time, which ended on 4/18/20, Garcia (1) was
confined to his assigned cell 24 hours a day (2) was not allowed to posses
in his cell any form of entertainment appliances, such as a t.v., radio, or
compact disc player. Nore books or recreational games or playing cards and/or
any form of hobby craft materials (3) was not allowed to participate in any
form of out-of-cell/in-door Dayroom programs or recreational actibities. Nore
in any form of out-of-cell/out-door yard, exercise, programs, or recreational
actibities (4) and was not allowed to report to work as a yard crew worker.
These housing conditions imposed against Garcia failed to reasonably advance
a legitimate correctional goal setforth by its disciplinary procedures, deny
or interfered with Garcia medically prescribed daily recommended mental health
treatment and care, given his medically diagnozed chronic depressive disorder.

43.    Prison Medical Records will show: that Garcia's mental health primary
care provider(s) have recommended for Garcia as a mental health patient at the
CCCMS Level of Care (1) daily participation in "out-of-cell/in-door Dayroom
programs and recreational actibities" (2) daily participation in "out-of-cell/

out-door yard exercise,walks,programs, and recreational actibities". Specifically,
because of Garcia medically diagnozed chronic depressive disorder. In
addition, Garcia primary care provider(s) have recommended "for Garcia to be
able to watch t.v. or listen to music or the radio, to be able to read books,
or to engage in recreational games or hobby craft" during those periods he is
confined to his cell, given his serious medical needs.

44.     Garcia submitted a formal 602 Inmate Appeal/Grievance Form and 7362
Inmate Request Form for Medical Services complaining:that due to his C-Status
Inmate Segregated Housing/Detention and programs/property restrictions status
"he had began to experience daily bouts of anxiety, an inability to sleep,
racing thoughts,feeling over-whelmed.". In response, Garcia's primary care
provider(s) upon evaluating his medically diagnozed chronic depressive disorder
[found] Garcia condition had been exacervated,due to his housing conditions
depriving him of the minimal civilized measure's of life's necessities,as
discribed above, and for these reasons they prescribed for Garcia as daily
medically necessary treatment and care the medication "Prozac" to be taken
jointly and together with the medication "Visteril" both of which are powerful
anti-psychotic medications in an attempt to treat Garcia's serious medical
needs which arose due to his housing conditions.

LEGAL CLAIMS

FIRST CAUSE OF ACTION

(First Amendment Retaliation)

45.     Garcia re-alleges and incorporates by reference all previous paragraphs
of this Complaint.

46.     As set forth above, Garcia was subjected to deprivation of rights by
defendants CHANDRA, MOHR, CHARON, QUIRING, and WEISS,acting or pretending to
act under color of state law and of statutes,or ordinances,regulations,customs,
and usages of the Law of the United States and the State of California which

rights include,but not limited to,privileges and immunities secured to Garcia by the Constitution and the laws of the United States. By reason of the aforementioned acts, these defendants have violated Garcia's constitutional rights and liberty interests,including those provided by the First,Eighth, and Fourteenth Amendments of the United States Constitution.

47.    In doing the acts complained of, defendants CHANDRA,MOHR,CHARON,QUIRING, and WEISS acted under color of State law to deprive Garcia of certain constitutionally protected rights,including but not limited to, the rights to protections,the right to due process,and the right to be free from retaliatory and conspiratorial conduct and/or to not be deprived of the minimal civilized measures of life's necessities or to not be subjected to cruel and unusual punishment as guaranteed by the First, Eighth, and Fourteenth Amendments of the United States Constitution.

48.    Defendant CHANDRA engaged in adverse actions taken against Garcia in order to chill his exercise of his First Amendment rights. These actions included: (1) verbally threatening Garcia that "he will have his Sgt. remove Garcia from Facility A Unit 1 General population housing assignation and programs participation for filing grievance(s) against CHANDRA"; (2) filing with the CDCR retaliatory RVR-115 disciplinary charges against Garcia and entering false allegations within said report,accusing Garcia of inciting other inmates, in support of said charges; (3) conspiring with order defendants "to have Garcia removed from Facility A Unit 1 General Population housing assignation and programs participation based upon said retaliatory disciplinary charges" and doing so in clear violation of prison disciplinary procedures. These individual actions by CHANDRA were carryout in violation of Garcia constitutional rights guaranteed by the First, Eighth, and Fourteenth Amendments of the U.S. Constitution.

49.    Defendant MOHR engaged in adverse actions taken against Garcia in order to chill his exercise of his First Amendment rights. These actions included: allowing defendant CHANDRA to subject Garcia to retaliatory disciplinary charges/action by [APPROVING] for the CDCR to tinitiate/take disciplinary action against Garcia based upon RVR-115 that had been computer generated with information imputed into it on 1/12/20 by CHANDRA for an alleged offense which had occurred on 1/2/20 ten days prior, in clear violation of CCR disciplinary procedures requirement that said RVR-115 be filed with the CDCR by end of work shift on the day offense occur. These individual actions by MOHR were carryout in violation of Garcia constitutional rights guaranteed by the First, Eighth, and Fourteenth Amendments to the U.S.Constitution.

50.    Defendant CHARON engaged in adverse actions taken against Garcia in order to chill his exercise of his First Amendment rights. These actions included: allowing defendant CHANDRA, and MOHR to subject Garcia to retaliatory disciplinary charges/action by [CLASSIFYING] as serious and [APPROVING] for th CDCR to initiate/take disciplinary actions against Garcia based upon RVR-115 that had been computer generated with information imputed into it on 1/12/20 by defendants for an alleged offense which had occurred on 1/2/20 ten days prior, in clear violation of CCR disciplinary procedures requirements that said RVR-115 be filed with the CDCR by end of work shift on the day the offense occurred. These individual actions by MOHR were carryout in violation of Garci constitutional rights guaranteed by the First, Eighth, and Fourteen Amendments to the U.S. Constitution.

51.    Defendant QUIRING engaged in adverse actions taken against Garcia in order to chill his exercise of his First Amendment rights. These actions included: (1) Refusing to accept/consider documentary evidence presented by Garcia at disciplinary hearing supporting his "not guilty" pled and claims

that RVR-115 charges against him were retaliatory in nature (2) Refusing to accept/consider that RVR-115 disciplinary charges against Garcia were computer generated by defendants with information imputed by them on 1/12/20 for an offense which had allegedly occurred on 1/2/20 ten days prior to the date charges were filed against Garcia or that defendants had [only] filed said charges [after] Garcia filed grievances against CHANDRA (3) Verbally threatened "to have facility staff immediately remove Garcia from general population housing assignation and programs participation eligibility and to have them place Garcia in C-Status Inmate Segregated Housing Detention and programs/property restrictions" based upon defendants disciplinary charges against him notwithstanding clearly established CDCR prison disciplinary procedures [prohibiting] any such sanctions against Garcia based upon his lack of disciplinary history developed within the last 180 days (4) carryout these verbal threats in clearly violation of prison disciplinary procedures (5) supported the imposition of said disciplinary sanction against Garcia by [falsely] alleging to the CDCR within writen Hearing Results that defendants disciplinary charges against Garcia were the third offense adjudicated against him by the CDCR within the last 180 days (6) Refused to or failed to refer to Institutional Classification Committee for review and approval his decision to place Garcia in C-Status Inmate Segregated Housing/Detention and property/ programs restriction for 90 days (7) Falsely claimed within writen Hearing Results to the CDCR that he was not required to refer such decision for ICC review and approval per the CCR.

52.    Defendant WEISS engaged in adverse actions taken against Garcia in order to chill his exercise of his First Amendment rights. These actions included: allowing defendants to subject Garcia to retaliatory disciplinary action by [CERTIFYING][SANCTIONING] aproval for defendant QUIRING decision "to place Garcia in C-Status Inmate Segregated Housing/Detention and property/

programs restrictions for a period of 90 days" based upon defendants RVR-115
disciplinary charges against him. Notwithstanding the lack of any existing
disciplinary history developed by Garcia within the last 180 days, or that
the writen Hearing Results [falsely] alleged RVR-115 charges against Garcia
were the third offense adjudicated against Garcia within the last 180 days.
In addition, defendant WEISS refused to refer for ICC review and approval
his decision"to place Garcia in C-Status Inmate Segregated Housing/Detention
and programs/property restrictions for 90 days" in clear violation of prison
disciplinary procedures and in doing so [falsely] claimed to the CDCR that
he was not required to do so per the CCR.

### SECOND CAUSE OF ACTION

### (Procedural Due Process Violation)

53.    Defendant QUIRING actions, such as: (1) Refusing to call Garcia's
requested witnesses without cause (2) Refusing to accept/consider documentary
evidence presented by Garcia at disciplinary hearing (3) Finding Garcia guilty
as charge and providing an inadequate writen disposition of the charges
(4) Imposing against Garcia as punitive disciplinary action placement in
C-Status Inmate Segregated Housing/Detention and programs/property restrictions
for a period of 90 days and providing false information to the CDCR within
writen Hearing Results to support such actions (5) and failing to refer to
ICC for review and approval his decision to place Garcia in C-Status under
false pretenses, denied Garcia due process of law in violation of the
Fourteenth Amendment of the U.S.Constitution.

54.    Defendant WEISS actions, such as: Refusing/Failing to over-turn Garcia
disciplinary conviction or defendants decision to place him on C-Status,
despite his knowledge of the above described due process violations, denied
Garcia due process of law in violation of the Fourteenth Amendment to the U.S.C.

## THIRD CAUSE OF ACTION

### (Eighth Amendment Claims)

55.    Defendant WEISS actions, such as: Refusing to over-turn Garcia disciplinary conviction or defendants decision to place Garcia in C-Status Inmate Segregated Housing/Detention and programs/property restrictions, despite his knowledge of the lack of any existing disciplinary history developed by Garcia within the last 180 days as required to exist for such placement per the CCR or of the above described due process violations, constituted deliberate indifference in violation of the Eighth Amendment to the U.S.Constitution.

56.    Defendants CHANDRA,MOHR,CHARON,QUIRING, and WEISS actions, such as: placing Garcia in C-Status Inmate Segregated Housing/Detention and programs/ property restrictions for a period of 90 days while failing to advance a legitimate correctional goal, deprived Garcia of the minimal civilized measures of life's necessities and constituted deliberate indifference in violation of the Eighth Amendment to the U.S.Constitution.

57.    Defendants CHANDRA,MOHR,CHARON,QUIRING, and WEISS actions, such as: placing Garcia in C-Status Inmate Segregated Housing/Detention and programs/ property restrictions for a period of 90 days, despite their knowledge that Garcia was a mental health patient at the CCCMS Level of Care while medically diagnozed as suffering from chronic depressive disorder or that said housing conditions deny or interfered with Garcia medically recomended mental health treatment and care, constituted deliberate indifference in violation of the Eighth Amendment to the U.S.Constitution.

FOURTH CAUSE OF ACTION

(Conspiracy)

58.    Garcia re-alleges and incorporates by reference the allegations contained in all previous paragraphs and further alleges that defendants conspired to commit the unconstitutional acts described therein.

59.    Garcia asserts his Fourth Cause of Action for Conspiracy under federal law to violate his Civil Rights.

60.    Defendants CHANDRA, MOHR, CHARON, QUIRING, and WEISS entered into a civil conspiracy and agreement, to violate the civil rights of Garcia, by engaging in the conduct,acts, and omissions alleged herein by unlawfully retaliating against Garcia, by subjecting him to  retaliatory verbal threats for exercising his First Amendment right "to file grievances and seek redress without being subjected to adverse action for doing so", subjecting him to retaliatory disciplinary charges/actions, and using the prison disciplinary procedures to carryout verbal threats against him while failing to reasonably advance a legitimate correctional goal and in clear violation of Garcia vested civil rigths guaranteed him under the First,Eighth, and Fourteenth Amendments to the U.S. Constitution. In addition to the conduct alleged above, said conspiracy and agreement is evidenced by the fact, inter alia, that said defendants: (a) ordered,directed and knowingly failed,refused and/or refrained from intervening in or stopping the wrongful conduct alleged herein; and/or (b) engaged in conduct alleged herein that was unlikely to have been undertaken without an agreement. None of the individual named defendants would have unreasonably violated Garcia's constitutional rights but for an agreement with the other individually named defendants.

61.    Defendants are legally responsible for, and indeed proximately and legally caused the damages alleged herein for the reasons alleged above and incorporated herein by reference.

## DAMAGES

62.    Garcia has no plain, adequate or complete remedy at law to redress the wrongs described herein unless the Court grants the declaratory and injuctive relief which Garcia seeks.

63.    Garcia also seeks compensatory damages for the loss of quality of life in his prison living conditions.

64.    Garcia seeks punitive damages against defendants CHANDRA,MOHR,CHARON, QUIRING, and WEISS for their willful and malicious conduct in retaliation against Garcia for his legitimate constitutionally protected conduct actibities, such as filing grievances and seeking redress as allowed under the First Amendment to the U.S.Constitution.

### PRAYER FOR RELIEF

WHEREFORE, Garcia respectfully prays for the following relief:

1.    A declaratory judgement that defendants acts and/or omissions described herein violated Garcia's rights as herein stated.

2.    A preliminary and permanent injuctuion which prohibits and requires that defendants,their agents and successors cease harassment and retaliation for Garcia's court litigation.

3.    A judgement enter by this court instructing CDCR to [VOID][NULL] in the interest of justice Garcia's RVR-115 disciplinary conviction.

4.    Punitive damages of $ 50,000.00 from any defendant found to have intentionally denied/violated Garcia's vested rights.

5.    Further relief that the court deems just and proper in this case.

### JURY DEMAND

Trial by jury of all issues is demanded.

## VERIFICATION

Plaintiff, Ruben Dario Garcia Jr., respectfully prays for relief as e executed this April 27, 2023, at Ione, California. This as verified complaint in that the undersigned Plaintiff, as declarant, in fact declares that the information contained in this complaint is both true and correct to the best of his knowledge,information and belief and declares under penalty of perjury that the foregoing is true and correct in every way known to him. Title 28 U.S.C. § 1746.

Dated: April 27, 2023.

Respectfully submitted:

RUBEN GARCIA- In Proper
By and through Jailhouse
Lawyer(s) assistance.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Ruben Dario Garcia Jr.
_____
Plaintiff or Petitioner

V.

A. Chandra, et al, -
_____
Defendant or Respondent

Case Number: 22-CV-1221 KJN P

**PROOF OF SERVICE**

/

I hereby certify that on  April 27, 2023  , I served a copy of the attached

First Amended Complaint

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter listed. by depositing said

envelope in the United States Mail at   Mule Creek State Prison
Facility - A-4-243
P.O. Box 409020
Ione, CA. 95640

I declare under penalty of perjury that the foregoing is true and correct.