UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN DARIO GARCIA, JR, | No.  2:22-cv-01221-TLN-CSK P |
| Plaintiff, | |
| v. | ORDER AND |
| A. CHANDRA, et al., | FINDINGS & RECOMMENDATIONS |
| Defendants. | |

I.      INTRODUCTION

Plaintiff is a state prisoner proceeding pro se.  Defendants' fully briefed motion for summary judgment is before the Court.  Defendants move for summary judgment on the grounds that they did not retaliate against plaintiff in violation of the First Amendment, did not violate plaintiff's Eighth Amendment rights, did not violate his right to procedural due process, did not conspire against him in violation of federal law, and are entitled to qualified immunity. As discussed below, the Court recommends that the motion be granted.

II.     PROCEDURAL HISTORY

Plaintiff commenced this action on July 11, 2022.  (ECF No. 1.)  On May 4, 2023, he filed the operative amended complaint.  (ECF No. 14.)  On December 7, 2023, the then-assigned magistrate judge found that, for screening purposes, the amended complaint stated cognizable claims against defendants A. Chandra, K. Mohr, J. Quiring, J. Charon, and J. Weiss for allegedly

1

retaliating against plaintiff in violation of the First Amendment and violating his Eighth Amendment rights. It also stated claims against defendants Quiring and Weiss for allegedly violating plaintiff's due process rights. (ECF No. 15.) On May 10, 2024, defendants filed an answer to the amended complaint. (ECF No. 25.)

Defendants filed the instant motion for summary judgment on October 10, 2025. (ECF No. 73.) Plaintiff filed an opposition on April 6, 2026, signed on April 1, 2026.[1] (ECF No. 83).

III.    COMPLAINT

In his verified amended complaint, plaintiff alleges that, on January 2, 2020, he approached defendant Chandra, the control booth operator in plaintiff's unit at Mule Creek State Prison (MCSP), and complained that inmates were not being allowed to shower because a group of inmate workers were using the showers. (ECF No. 14 (hereinafter, referred to as "FAC" for first amended complaint), ¶ 17.) Chandra allegedly responded: "Why don't you throw these inmates out of the showers!" (Id.) The same day, plaintiff filled out a prison grievance form complaining that "Chandra had violated the [rules] by inciting acts of violence against inmates[.]" (Id., ¶ 18.) Chandra filled out the response portion of the grievance, and plaintiff submitted a request for a supervisor to review it. (Id., ¶¶ 19-20.) Chandra then allegedly used the loudspeaker to announce to the unit: "[B]ecause Garcia cell 217 is complaining about the showers and late program, I want all inmates in the showers to get out and lock up. If he keeps complaining, I will get my [sergeant] to move both of them out of my building!" (Id., ¶ 20.) Plaintiff alleges this was a retaliatory verbal threat. (Id., ¶ 21.)

On January 12, 2020, defendants Chandra and Mohr filed a Rules Violation Report charging plaintiff with violating prison rules in the January 2, 2020 incident. (Id., ¶ 23.) The RVR stated that plaintiff "insisted on speaking" with Chandra, "failed to comply" with an order to wait, and "continued to distract me." (Id., ¶ 24.)

> I felt it necessary to put the Dayroom down so I can safely counsel him. I advised inmate Garcia that the [inmate] workers were already in the shower prior to Dayroom being open, once they are done you can continue with your showers. It took about 10 minutes until

---

[1] The Court accepts the opposition as timely under its February 3, 2026 order.

> Garcia complied and were [sic] finally able to resume releasing inmates for Dayroom activities. This delayed the floor officers performing their duties as well as delayed Dayroom for Building #1.

(Id., ¶ 24.) On January 14, 2020, plaintiff was served with the RVR charges against him. (Id., ¶ 26.)

On January 19, 2020, defendant Quiring, the disciplinary hearing officer, held a hearing on the RVR against plaintiff. (Id., ¶ 27.) Plaintiff pled not guilty and asked for witnesses to be called. (Id., ¶¶ 26, 30.) Quiring did not call plaintiff's requested witnesses and allegedly made retaliatory "verbal threats" against him. (Id., ¶¶ 31-33.) Plaintiff was found guilty of the charge and sanctioned with 90 days of segregated housing and other restrictions. (Id., ¶ 36.) Defendant Weiss, acting as Chief Disciplinary Officer, signed the hearing results. (Id., ¶ 38.) Defendant Charon allowed and approved the disciplinary actions. (Id., ¶ 49.)

On January 24, 2024, as a result of the disciplinary finding, plaintiff was removed from the general population and placed in segregated housing, where he was confined to a cell 24 hours a day and not allowed to participate in out-of-cell programs for 90 days. (Id., ¶ 42.) Plaintiff submitted a grievance form complaining that he was having mental health symptoms due to the segregating housing and restrictions. (Id., ¶ 44.)

Plaintiff asserts the following causes of action: (1) First Amendment retaliation, (2) Fourteenth Amendment due process violations, (3) Eighth Amendment deliberate indifference, and (4) conspiracy to violate his constitutional rights. (Id., ¶¶ 45-64.) He seeks damages and declaratory and injunctive relief. (Id. at 22.)

IV.    LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate

3

the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3

(9th Cir. 2002).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes to 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

In the discovery and scheduling order filed on May 14, 2024, plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 26 at 6-7), citing Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc).)

V.    UNDISPUTED FACTS

For purposes of summary judgment, the undersigned finds these facts are undisputed.[2]

---

[2]  See ECF No. 73-4 (Defendant's Statement of Undisputed Material Facts ("DUF") & ECF No. 83-1 (Plaintiff's Statement of Disputed Facts ("PDF")).

Where plaintiff failed to properly address defendant's assertion of fact as required, this Court considers the fact undisputed.  See Fed. R. Civ. P. 56(e)(2).

1. Plaintiff is an inmate in the custody of the California Department of Corrections (CDCR) who at all times relevant to this case was incarcerated at MCSP.  (DUF 1.)

2. On January 2, 2020, plaintiff and defendant Chandra had a conversation regarding the Prison Industry Authority (PIA) inmate workers being in the showers.  (DUF 2.)

3. Also on January 2, 2020, defendant Chandra submitted a Rules Violation Report (RVR) against plaintiff for delaying him in his duties in the above incident.  (DUF 5; see ECF No. 73-2 at 16 (RVR hearing report summary of Chandra's statement in RVR)).

4. Prior to submitting the RVR on January 2, 2020, Chandra did not speak with any of the other defendants.  (DUF 6.)

5. Between January 2 and 12, 2020, defendant Chandra and his supervisor, defendant Mohr, went back and forth revising and reviewing the RVR until Mohr approved the RVR on January 12, 2020 and had it submitted for classification.  (DUF 7.)

6. Defendant Mohr did not discuss the RVR with defendants Charon, Quiring, or Weiss. (DUF 9.)

7. On January 13, 2020, defendant Charon classified the RVR as "serious."  (DUF 10.)

8. A prisoner's misconduct reported on an RVR is classified "serious" if his behavior is a serious disruption to facility operations and/or a repeated pattern of rule violations for the same offense.  (DUF 11.)

9. This RVR was at least plaintiff's third time being charged with delaying a peace officer in his duties.  (DUF 12.)

10. On January 14, 2020, plaintiff was given notice of his RVR hearing, including the allegations and the charges against him.  (DUF 13, 14.)

11. The RVR hearing took place on January 19, 2020.  (DUF 15.)

12. Defendant Quiring was the hearing officer.  (DUF 16.)

13. At the RVR hearing, plaintiff acknowledged that defendant Chandra put the day room

6

down in order to speak to him.  (DUF 19; see ECF No. 73-2, Quiring Decl., Ex. A.)

14. At the RVR hearing, plaintiff was able to present his version of events.  (DUF 20.)

15. Plaintiff requested his brother, Lenin Garcia, and two correctional officers to be called as witnesses.  (DUF 21.)

16. Because Lenin Garcia was not present during defendant Chandra and plaintiff's conversation on January 2, 2020, defendant Quiring determined his testimony was irrelevant.  (DUF 22 & 23.)

17. Defendant Quiring found plaintiff guilty of the RVR for delaying a peace officer in his duties.  (DUF 24; see ECF No. 73-2 at 18 (Disciplinary Hearing Results).)

18. Defendant Quiring sanctioned plaintiff 90 days' credit loss and 90 days' Privilege Group C.  (DUF 27.)

19. Defendants Chandra, Mohr, Charon, and Weiss did not speak with Quiring either prior to, or during, the RVR hearing about the events giving rise to this lawsuit.  (DUF 26 & 27.)

VI.    FIRST AMENDMENT RETALIATION CLAIM

   A.    **Standards Governing Retaliation Claims**

The previously-assigned magistrate judge found that, for screening purposes, the amended complaint stated a First Amendment retaliation claim against defendants Chandra, Mohr, Charon, Quiring, and Weiss.  (ECF No. 15.)

To summarize the relevant allegations and facts: Chandra allegedly made a "retaliatory verbal threat" to plaintiff on January 2, 2020 after plaintiff filed a grievance about him. Ten days later, Chandra and Mohr filed an RVR charging plaintiff with delaying a peace officer in the January 2, 2020 encounter between plaintiff and Chandra about the showers being occupied. Charon classified the RVR as "serious," as plaintiff had previously been charged with delaying a peace officer in his duties at least twice. Quiring was the hearing officer at plaintiff's January 19, 2020 hearing, finding him guilty of delaying a peace officer in his duties on January 2, 2020. Quiring did not call plaintiff's requested witnesses and allegedly made retaliatory "verbal threats" against him at the hearing.  Weiss was the Chief Disciplinary Officer who signed the hearing

7

results.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). A viable retaliation claim in the prison context has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Although "a corrections officer may not retaliate against a prisoner for exercising his First Amendment right to report staff misconduct," courts must nonetheless "defer to reasonable decisions of prison officials." Shepard v. Quillen, 840 F.3d 686, 688 (9th Cir. 2016).

**B.     Discussion**

Here, construing the facts in plaintiff's favor, defendants took various adverse actions against him. However, plaintiff has made no showing of a triable issue of fact on three key issues.

1.     No Evidence of Retaliatory Motive

The Court finds there is insufficient evidence to raise a triable issue of fact concerning the existence of a retaliatory motive on the part any of the defendants.

To establish a retaliatory motive, plaintiff is required to "show that his protected conduct was the substantial or motivating factor behind the defendant's conduct." Brodheim, 584 F.3d at 1271 (internal quotation marks and citation omitted); see Hartman v. Moore, 547 U.S. 250, 259 (2006) (explaining that a section 1983 plaintiff "must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action"). In other words, plaintiff must "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendants'] intent" in issuing the RVRs against plaintiff. Brodheim, 584 F.3d at 1271 (quoting Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003)).

Plaintiff asserts that "circumstantial evidence" shows defendants conspired to retaliate

against him in various ways, culminating in disciplinary sanctions.  (See ECF No. 73-3 at 15 ("Plaintiff's entire retaliation claim is based on the premise that Defendant Chandra did not submit [the RVR] against Plaintiff until ten days after the January 2, 2020 incident and in that 10-day period, Defendants conspired against him to have the RVR issued.").)

However, the undisputed facts show a straightforward sequence of events:  Plaintiff approached Chandra and engaged him in dialogue about the showers.  Plaintiff then filed a grievance against Chandra.  Chandra and Mohr then filed a RVR about plaintiff interrupting Chandra's duties, requiring him to put the day room down.  Mohr classified the RVR as serious because plaintiff had interrupted officers multiple times in the past.  Quiring held a disciplinary hearing on the RVR, denied plaintiff's witness requests, found him guilty, and assessed sanctions. Weiss signed off on the hearing results.

Having reviewed plaintiff's statement of disputed facts, there is lack of specific evidence that defendants acted from retaliatory motives.  Mere speculation that a defendant acted in retaliation is insufficient at the summary judgment stage.  See Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014).

2.    No Absence of Legitimate Correctional Purpose

Plaintiff has also failed to demonstrate a triable dispute of material fact as to whether defendants acted without a legitimate correctional purpose as to RVR, disciplinary hearing, and conviction.

Plaintiff bears the burden to prove the absence of a "legitimate correctional purpose motivating" the adverse actions.  See Pratt, 65 F.3d at 808.  In addition, this Court must "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  Id. at 807 (internal quotation marks and citation omitted).  An action does not reasonably advance a legitimate correctional goal when it is arbitrary and capricious or "unnecessary to the maintenance and order in the institution." Watison, 668 F.3d at 1115 (internal quotation marks omitted).

Here, even construing the facts in the light most favorable to plaintiff, there is no triable issue of fact on this element.  Rather, as set forth above, the evidence points to a series of

disciplinary events stemming from plaintiff's actions on January 2, 2020, based on the need to maintain order.

### 3. No Evidence of Harm from Verbal Threats

As to the alleged verbal threats by defendants Chandra and Quiring, plaintiff has not alleged or shown any resulting harm, i.e., the chilling of his First Amendment rights.  For a retaliation claim, a "prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct." Patterson v. Forbes, 2019 WL 2994498, at *3 (E.D. Cal. Jul. 9, 2019) )citing Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000)); see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Plaintiff has made no showing of this element.  In fact, at the RVR hearing, plaintiff announced his intention to lodge grievances against Chandra, Mohr and Charon for "coming together to file false reports" against him, which is contrary to showing that plaintiff's speech being chilled.  (See ECF No. 73-2 at 15.)  All five defendants are entitled to summary judgment on the retaliation claim.

## VII. DUE PROCESS CLAIM

Plaintiff claims defendants Quiring and Weiss violated his rights to procedural due process in the RVR hearing and conviction. He asserts that Quiring violated his rights by not calling his requested witnesses, among other reasons, and that Weiss violated his rights by approving the hearing decision and conviction.

### A. Standards Governing Due Process Claims

When a liberty interest exists, the constitutional due process a prisoner must receive encompasses: (1) 24-hour advanced written notice of the charges against him, (2) a written statement from the factfinder which identifies the evidence relied on and the reasons for the action taken, (3) an opportunity "to call witnesses and present documentary evidence in his defense when" doing so "will not be unduly hazardous to institutional safety or correctional goals," (4) assistance at the hearing if he is illiterate or the matter is complex, and (5) a "sufficiently impartial" factfinder. Wolff v. McDonnell, 418 U.S. 539, 565-70 (1974).

If the Wolff requirements are satisfied, the successive inquiry is whether the guilt finding reached during the disciplinary proceeding is supported by "some evidence." Superintendent v.

10

Hill, 472 U.S. 445, 455 (1985).  The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the factfinder.  Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Hill, 472 U.S. at 455–56); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) ("[T]he standard is 'minimally stringent' only requiring 'any evidence in the record that could support the conclusion reached by the disciplinary board.'").

### B.   Discussion

Here, the undisputed evidence shows that plaintiff received advance written notice of the charge and allegations against him.  Thus, the first and second Wolff elements are satisfied.

Plaintiff also had the opportunity to call witnesses and present a defense.  As to Quiring's decision not to call plaintiff's requested witnesses, including plaintiff's brother, the right to call witnesses at prison disciplinary hearings "is not unlimited."  Hilson v. Mijares, 2022 WL 1432577, *6 (C.D. Cal. Mar. 24, 2022) (citing Wolff, 418 U.S. at 566), report and recommendation adopted, 2022 WL 1423271 (C.D. Cal. May 4, 2022).

> Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." Prison officials also may refuse to call witnesses when the evidence would be irrelevant or unnecessary. Prisoners do not have the right to call witnesses in order to confront or cross-examine them. *The failure to call a witness is harmless if the facts alleged do not demonstrate that the testimony would have provided relevant information supporting the prisoner's defense.*

Hilson, 2022 WL 1432577, *6 (citations omitted) (emphasis added); see also Cal. Code Regulations, Tit. 15, § 3315(e)(1)(B) (incarcerated person may request that witnesses attend the hearing unless the hearing officer determines that the witness has no relevant or additional information).

Plaintiff sought to call his brother, inmate Lenin Garcia, along with Officers Warren and Hurd.  (ECF No. 73-2, Quiring Decl. at ¶ 5.)  Quiring deemed Lenin Garcia's testimony irrelevant because he was not present for plaintiff's and Chandra's conversation on January 2, 2020.  (DUF

11

22, 23.)  As to Officers Warren and Hurd, "the assigned floor officers" on January 2, 2020 (FAC, ¶ 26),  plaintiff sought their testimony because "they would have been able to see that I did not delay [Chandra] like he said for ten minutes, that I was not arguing." (ECF No. 73-2, Sheps Decl., Ex. 2 at 128:24-129:6.)  Quiring determined that their testimony "was unnecessary as Plaintiff admitted Officer Chandra had put the floor down to speak with him."  (Id.; see DUF 19.)  Plaintiff does not raise a dispute of material fact concerning whether these witnesses would have provided relevant information supporting his defense.  Accordingly, the third Wolff factor is satisfied.

Plaintiff does not claim he needed assistance at the hearing, covering the fourth Wolff factor.  The final issue is where defendant Quiring was a "sufficiently impartial" factfinder.  Quiring did not speak with the other defendants prior to, or during, the RVR hearing, about the events giving rise to this lawsuit.  (DUF 26, 27.)  Aside from conclusory allegations of the defendants conspiring against him, plaintiff offers no evidence that Quiring was biased.  Thus, the fifth Wolff factor is satisfied.

Finally, plaintiff's disciplinary conviction was supported by sufficient evidence to satisfy due process, including defendant Chandra's narrative of events in the RVR and plaintiff's admission that Chandra put the floor down to speak with him.  Evidence supports the classification of the RVR as "serious."  See Cal. Code Regs., Title 15 §§ 3315(2)(C), 3315(3)(M) (inmate misconduct classified serious in RVR if it involves "a serious disruption of facility operations" or "a repeated pattern of administrative rule violations for the same offense").

Defendants Quiring and Weiss are entitled to summary judgment on the due process claims.

VIII.   EIGHTH AMENDMENT CLAIM

Plaintiff's Eighth Amendment claim stems from his disciplinary sentence of 90 days of Group C privileges, subjecting him to restrictions including segregated housing, not being able to possess a TV, radio, games, or "hobby craft materials," and not being allowed to participate in dayroom programs or recreational activities.  (FAC, ¶ 42.)  Where "C-status deprivations [are] limited in duration and type, . . . these limited deprivations do not constitute a [prison] hardship that is atypical and significant" or give rise to an Eighth Amendment violation.  Sanchez v.

12

Miller, 2016 WL 536890, at *5 (S.D. Cal. Jan. 5, 2016) (collecting cases).  Moreover, plaintiff does not causally link defendants to his conditions of confinement during this period.  Defendants are therefore entitled to summary judgment on the Eighth Amendment claim.

IX.     CONSPIRACY CLAIM

A cause of action for conspiracy under 42 U.S.C. § 1983 requires: "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement."  Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010).  Despite plaintiff's sweeping allegations of a conspiracy between the defendants, he has not created a material dispute of fact on first element.  To prove conspiracy, a plaintiff must establish "an agreement or meeting of the minds to violate constitutional rights, and a conclusory allegation of conspiracy, unsupported by facts, is insufficient."  Thomas v. Marshall, 2024 WL 5507537, at *15 (C.D. Cal. Feb. 7, 2024) (quoting Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (internal quotation marks omitted)).  Here, the undisputed facts show that Chandra and Mohr "went back and forth reviewing the RVR" against plaintiff for several days; but, as discussed above, the RVR did not deprive plaintiff of his constitutional rights.  It is factually undisputed that Mohr did not discuss the RVR with the other three defendants, and that RVR hearing officer Quiring did not speak with any other defendants about the subject incident, either before, during, or after the hearing.  No evidence shows an express or implied agreement between any two defendants to deprive plaintiff of his constitutional rights.  Defendants are entitled to summary judgment on this claim.

X.     QUALIFIED IMMUNITY

Defendants assert that, if the Court finds that any defendant violated plaintiff's constitutional rights, a reasonable official in defendants' circumstances would not have known his conduct violated a clearly established right.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity

13

shields an officer from liability even if his or her action resulted from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (internal quotation marks and citation omitted).

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." Robinson v. York, 566 F.3d 817, 821 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  A right is "clearly established" when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that 'every reasonable official would [have understood] that what he is doing violates that right.'"  Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Taking the facts in the light most favorable to plaintiff, for the reasons discussed above, the facts alleged do not show that defendants violated plaintiff's constitutional rights.  For this reason, the doctrine does not apply, and the Court need not address the second prong of the qualified immunity analysis.  See County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

XI.   CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that plaintiff's motion to file opposition exceeding page limit (ECF No. 81) is DENIED as moot.

Further, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment (ECF No. 73) be GRANTED as to all claims;

2.  Judgement be granted as to defendants A. Chandra, K. Mohr, J. Quiring, J. Charon, and J. Weiss, and this action be terminated.

These findings and recommendations are submitted to the United States District Judge

14

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 6, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

6/garc1221.msj.f&rs

15